# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| **RAVIT PAB** §<br>§<br>*Plaintiff* §<br>§<br>**v.** §<br>§<br>**CHANVEASNA SOM and DANY OUN** §<br>**SOM** §<br>§<br>*Defendants* § | Civil Action No. 3:19-cv-1480-N |

## DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

**RAY GALVAN, P.C.**

By: /s/ *Ray Galvan, Jr.*

    Ray Galvan, Jr.
    TX St. Bar No. 07599300

1010 Gateway Tower
8111 LBJ Frwy. Ste. 1010
(972) 235-8160 *Telephone*
(972) 235-6217 *Facsimile*
raygalvan@gmail.com

***ATTORNEY FOR DEFENDANTS***

**TABLE OF CONTENTS**

I.   **INTRODUCTION** ...................................................................................................................1

II.  **ARGUMENT AND AUTHORITIES**............. ................................................................... 2

   A.  **Legal Standard for Motion to Dismiss under FRCP 12(b)(6)**........................................2

   B.  **Plaintiff Does Not Allege Facts that Give Rise to Criminal Acts Under TVPRA**........3

      1.   **§1589 – Forced Labor** ………………………………………………….. 4

      2.   **§1592 – Unlawful Conduct with Respect to Documents** ……………... 6

   C.  **Plaintiff's Complaint Fails to Establish Individual or Enterprise Coverage**………….7

      1.   **Individual Coverage** ………………………………………………….....7

      2.   **Enterprise Coverage** ……………………………………………………9

III. **CONCLUSION**........................................................................................................10

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)..................................................................................1

*Bell Atlantic v. Twombly v.* 550 U.S. 554 (2007) .......................................................................3

*Canal v. Dann* (N.D. Cal. Sept. 2, 2010, No. 09–3366 CW) 2010 WL 3491136..........................5

*Centeno v. Facilities Consulting Grp., Inc.,* No. 3:14-CV-3696-G, 2015 WL 247735
 (N.D. Tex. Jan 20, 2015………………………………………………………….…10

*Conley v. Gibson* 355 U.S. 41 , 45-46 (1957). 161 F.3d 1178 (8th Cir. 1998) ..............................3

*Frith v. Guardian Life Ins. Co. of Am.,* 9 F. Supp. 2d 734, 737-38 (S.D. Tex. 1998) …………...2

*Lindgren v. Spears*, No. H-10-1929, 2010 WL 5437270 (S.D. Tex. Dec. 27, 2010) ………......8,10

*Martin v. Bedell,* 955 F.2d 1029, 1032 (5th Cir.1992).....................................................................7

*Mendoza v. Detail Sols*., LLC, 911 F.Supp.2d 433, 439 (N.D. Tex. 2012).....................................7

*Morrow v. JW Elec., Inc., No. 3:11-CV-1988*, 2011 WL 5599051
 (N.D. Tex. Nov. 16, 2011)…………………………………………………....……...8,10

*Muchira v. Al-Rawaf* (E.D. Va. Apr. 15, 2015, No. 1:14-cv-770) 2015 WL 1787144...................4

*Ruiz v. Fernandez*, 949 F.Supp.2d 1055, 1076–77 (E.D.Wash. 2013)...........................................5

*Shuvalova v. Cunningham* (N.D.Cal. Dec. 22, 2010, No. C 10–2159 RS) 2010 WL 5387770......5

*Sobrino v. Med. Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007)...............................8

*Teaney v. Kenneth & Co. Honey Do Servs*., No. 3:13-CV-4211-L, 2014 WL 3435416…..……..7,8

*U.S. v. Kozminski*, 487 U.S. 931, 935-36, 952-53, 108 S.Ct. 2751, 2756.......................................4

*U.S. v. Dann,* 652 F.3d 1160, 1170 (9th Cir. 2011)........................................................................5

*U.S. v. Calimlim*, 538 F.3d 706, 713 (7th Cir. 2008)......................................................................5

**STATUTES AND RULES**

FED. R. CIV. P. 12(b)(6) .................................................................................................. 1,2,3,8

18 U.S.C. § 1589(a)..............................................................................................................4

18 U.S.C. §1589(c)(1).).......................................................................................................5

18 U.S.C. §1589(c)(2)..........................................................................................................5

18 U.S.C §1592(a) ...............................................................................................................6

18 U.S.C. §1590 …………………………………………………………………………..…6

29 U.S.C. § 206(a)(1) …………………………………………………………………...7,9

29 U.S.C. § 207(a)(1)…………………………………………………………………...……7,9,10

29 U.S.C. § 203(s)(1)……………………………………………………………………..…….9

**LEGISLATIVE HISTORY**

H.R.Rep. No. 106–939, at 101 (Conf. Rep.), 2000 U.S.C.C.A.N. ……………….……………4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **RAVIT PAB** <br> *Plaintiff* <br><br> **v.** <br><br> **CHANVEASNA SOM and DANY OUN SOM** <br> *Defendants* | § § § § § § § § § § § <br><br> Civil Action No. 3:19-cv-1480-N |

## DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

Defendants Chanveasna Som and Dany Oun Som ("the Soms") files this joint motion to dismiss Plaintiff Ravit Pab's claims under Federal Rule of Civil Procedure 12(b)(6), showing in support as follows:

### I. INTRODUCTION

Plaintiff entered the United States from Phnom Pehn Cambodia on or about May 24, 2017 pursuant to the Diversity Immigrant Visa Program (DV Program), also known as the green card lottery. The DV Program is administered by the U.S. Department of State and makes available up to 50,000 immigrant visas annually to individuals who are from countries with low rates of immigration to the United States.

Based on Plaintiff's complaint, Defendants colluded with a person in Cambodia named Pisheth Seng to recruit Plaintiff to enter the green card lottery in 2013 (¶¶27-28). Presumably, Defendants waited three (3) years for Plaintiff to be randomly selected to receive an opportunity to obtain a green card, and when he was selected, they waited another year for him to arrive in the United States just so that he could work at Jimmy's Donut shop for approximately three (3) months from May 25, 2017 to August 27, 2019 (¶¶41&56). During that period, Plaintiff complains that Defendants' paid his original sponsor $5,000 on his behalf (¶40), lived with Defendants in their

home for free (¶39), slept in their children's bedroom (¶39), and borrowed $10,500 to send to his mother in Cambodia (¶49). Accordingly, during Plaintiff's first month in the United States, he received an aggregate amount of $16,000 from Defendants (¶49), an amount that can hardly be characterized as financially beneficial to Defendants (¶72) and/or cheap labor (¶72b). And as a result of Plaintiff incurring debts in Cambodia and in the United States, Plaintiff claims Defendants are responsible for "lur[ing] him into a situation where he faced a crippling amount of debt" (¶51).

Plaintiff fails to acknowledge that he would not be faced with a "crippling debt" if his mother had not requested that he borrow $10,500 from Defendants (¶49). Nor does Plaintiff take any responsibility for entering into an agreement in Cambodia with a "recruiter" to pay fees that he knew he could not afford to repay (¶39). Instead Plaintiff complains that Defendants and three "non-parties" are liable for engaging in a fraudulent scheme that caused him to incur so much debt, that he was kept in a "condition of financial vulnerability so that he had no choice but to labor for Defendants" (¶68).

## II. ARGUMENT AND AUTHORITIES

### A.    Legal Standard for Motion to Dismiss under FRCP 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a purported cause of action may be dismissed when the complaint fails to state a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), the complaint must meet two criteria:

1. It must assert a plausible claim; and

2. It must set forth sufficient factual allegations to support the claim.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) at 1949-50; see also *Frith v. Guardian Life Ins. Co. of Am.,* 9 F. Supp. 2d 734, 737-38 (S.D. Tex. 1998) (explaining that dismissal can be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory).

In *Bell Atlantic v. Twombly v.* 550 U.S. 554 (2007), the Supreme Court squarely rejected the Rule 12(b)(6) standard set forth under *Conley v. Gibson* 355 U.S. 41, 45-46 (1957). *Twombly*, 550 U.S. at 560-61. Pleadings are no longer satisfied by "an unadorned the-defendant-unlawfully-harmed me accusation." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly* 550 U.S. at 555). Now, neither a "formulaic recitation of the elements of a cause of action" nor "naked assertions [of fact] devoid of further factual enhancement" is sufficient to withstand dismissal. *Id*.

To satisfy the standard under *Twombly* and *Iqbal*, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (citing *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the plaintiff pleads enough factual content that allows the court to draw the reasonable inference that the defendant is liable under the alleged claim. *Id*. (citing *Twombly*, 550 U.S. at 556). "A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 1950. Therefore, if allegations are merely "conclusory," they are "not entitled to be assumed true." *Id*. Even if a court decides that the factual allegations are entitled to an assumption of truth, however, the facts must also "plausibly suggest an entitlement to relief." *Id.* at 1951.

**B. Plaintiff Does Not Allege Facts that Give Rise to Criminal Acts Under TVPRA**

The essence of Plaintiff's complaint is that he was allegedly misled by a recruiter regarding how much he would be paid to work in the United States and thus he regretted having to work long hours and under conditions that he hoped would have paid him a sufficient amount to pay back the money that his family borrowed to send him to the United States. But "[n]o matter how unpleasant the work, or the conditions under which services are provided, the critical inquiry for the purposes of the TVPRA is whether a person provides those services free from a defendant's physical or

psychological coercion that as a practical matter eliminates the ability to exercise free will or choice." *Muchira v. Al-Rawaf* (E.D. Va. Apr. 15, 2015, No. 1:14-cv-770) 2015 WL 1787144, at *7. The TVPRA does not regulate labor practices, redress employment disputes, or provide a remedy for fraud—it is a criminal statute enacted to combat serious human trafficking under which 20-year prison sentences can be imposed under provisions on which Plaintiffs rely.[1]

### 1. §1589 – Forced Labor

Congress enacted §1589 in response *to U.S. v. Kozminski*, 487 U.S. 931, 935-36, 952-53, 108 S.Ct. 2751, 2756, to address cases "where traffickers threaten harm to third persons, restrain their victims without physical violence or injury, or threaten dire consequences by means other than overt violence." (H.R.Rep. No. 106–939, at 101 (Conf. Rep.), 2000 U.S.C.C.A.N. at 1392–93.)

> §1589(a) provides that a person can be guilty of a crime by "knowingly provid[ing] or obtain[ing] the labor or services of a person":
>
> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person.
>
> (2) by means of serious harm or threats of serious harm to that person or another person;
>
> (3) by means of the abuse or threatened abuse of law or legal process; or
>
> (4) by any means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

*18 U.S.C. §1589(a)(1)- (4)*

---

[1] When the crime of forced labor was added to the TVPRA, Congress deliberately excluded a provision "addressing fraud or deception to obtain labor or services of minors, mentally incompetent persons, or persons otherwise particularly susceptible" to avoid "criminaliz[ing] conduct that is currently regulated by labor law." (H. R. Rep. No. 106-939, at 100-01, reprinted at 2000 U.S. Code Cong. & Admin. News 1380, 1392-93.)

"[A]buse or threatened abuse of law or legal process" is "the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action." (18 U.S.C. §1589(c)(1).) "[S]erious harm" is: any harm, whether physical or nonphysical, including psychological, financial, or reputational harm*, that is sufficiently serious*, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm. (18 U.S.C. §1589(c)(2).) emphasis added.

Certainly, "not all bad employer-employee relationships … will constitute forced labor." *U.S. v. Dann,* 652 F.3d 1160, 1170 (9th Cir. 2011). The typical forced labor case involves an individual illegally brought to the United States and kept in isolation by the employer under explicit and repeated threats of deportation. See, e.g.*, U.S. v. Calimlim*, 538 F.3d 706, 713 (7th Cir. 2008). In TVPRA cases in the Ninth Circuit where allegations or undisputed evidence was sufficient to establish forced labor, defendants typically made multiple threats of deportation, often accompanied by other harm or threats of other harm. (See, e.g., *Shuvalova v. Cunningham* (N.D.Cal. Dec. 22, 2010, No. C 10–2159 RS) 2010 WL 5387770, at **1-24, 7) (complaint alleged that defendant "began physically and verbally threatening" plaintiffs within weeks of their arrival from Russia, "threatened plaintiffs with physical violence," and "isolated plaintiffs from outside contact"); *Ruiz v. Fernandez*, 949 F.Supp.2d 1055, 1076–77 (E.D.Wash. 2013) (plaintiffs testified that defendant made "constant and continuous" "threats that he would call the police or immigration authorities" to "intimidate" them); *Canal v. Dann* (N.D. Cal. Sept. 2, 2010, No. 09–3366 CW) 2010 WL 3491136, at **1-2 (complaint alleged that for almost two years plaintiff worked for defendant fifteen hours a day, seven days a week as a housekeeper/nanny and was paid

$100 "only once"; defendant "repeatedly insulted and berated" plaintiff and "attempted to control every aspect of [plaintiff's] life"; defendant "held [plaintiff's] visa, passport and Peruvian identification card," taking them with her when she left the home; defendant "threatened [plaintiff] with deportation and arrest"; defendant "restricted [plaintiff's] communication and movement" and "isolated [her] from individuals that might assist her").)

These cases are a far cry from Plaintiff's situation who complains because Defendants loaned him $16,000 in the first month of his arrival into the United States and told him that he had to repay it. Therefore, Plaintiff's complaint does not allege conduct rising to the level of psychological coercion sufficient to constitute a crime under the TVPRA and should be dismissed.

### 2. §1592 – Unlawful Conduct with Respect to Documents

Section 1592(a) of the TVPRA states: "[w]hoever knowingly destroys, conceals, removes, confiscates, or possesses any actual or purported passport or other immigration document, or any other actual or purported government identification document, of another person—

(1) in the course of a violation of section 1581, 1583, 1584, 1589, 1590, 1591, or 1594(a);

(2) with intent to violate section 1581, 1583, 1584, 1589, 1590, or 1591;

shall be fined under this title or imprisoned for not more than 5 years, or both.

Plaintiff alleges, without referring to any specific facts, that Defendants violated Section 1592(a) because they confiscated or possessed Plaintiff's immigration documents in the course of violating, or with the intent to violate 18 U.S.C. §§1589, 1590. (¶77). For the sake of argument, if Defendants had temporary possession of Plaintiff's green card as stated in Plaintiff's complaint, and it was returned to Plaintiff once he requested it, Plaintiff cannot demonstrate that Defendants were acting in the course or with the intent of violating 18 U.S.C. §§1589, 1590.

Defendants do not meet the threshold requirement of §1589 because Defendants' threatened serious harm, as alleged by Plaintiff, was not sufficiently serious enough to compel

Plaintiff to work for Defendants. *i.e.* he was required to pay back the loan that Defendants made to him for $16,000. And as stated previously, such a low threshold of serious harm was not intended by Congress to invoke such harsh criminal penalties. Therefore, this claim should be dismissed

**C.     Plaintiff's Complaint Fails to Establish Individual Coverage or Enterprise Coverage.**

The sections of the FLSA dealing with minimum wage and overtime pay requirements apply only to (1) an employer with "employees who are engaged in commerce or in the production of goods for commerce, known as "individual coverage", or (2) to an employer with employees who are employed in an enterprise engaged in commerce or in the production of goods for commerce, known as "enterprise coverage". See 29 U.S.C. §§ 206(a)(1), 207(a)(1); *Martin v. Bedell,* 955 F.2d 1029, 1032 (5th Cir.1992) "Either individual or enterprise coverage is enough to invoke FLSA protection." *Martin,* 955 F.2d at 1032. However, the plaintiff has the burden of establishing individual or enterprise coverage. See *Mendoza v. Detail Sols.*, LLC, 911 F.Supp.2d 433, 439 (N.D. Tex. 2012). The allegations of individual and enterprise coverage set forth Plaintiff's complaint "fail[ed] to provide factual allegations pertaining specifically to the dispute at issue" *Teaney v. Kenneth & Co. Honey Do Servs.*, No. 3:13-CV-4211-L, 2014 WL 3435416, at *4 (N.D. Tex. July 15, 2014) (Lindsay, J.). Therefore Plaintiff's claim for coverage under the FSLA should be dismissed.

**1.     Individual Coverage**

Plaintiff has failed to allege facts that are sufficient to support individual coverage. Although the FLSA does not define "individual coverage," the Fifth Circuit Court of Appeals has instructed courts to determine whether the employee's job "is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a

part of it, rather than isolated local activity." *Mendoza,* 911 F.Supp.2d at 439 (Fish, J.) (citing *Sobrino v. Med. Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007)). Plaintiff's Complaint alleges individual coverage as follows:

> 83. "…[W]hile employed at Jimmy's Donuts by Defendants, Plaintiff was an individual engaged in the production of goods for interstate commerce within the meaning of Sections 3(j) and (7)(a)(1) of the FSLA, 29 U.S.C. §§203(j), 207(a)(1), in that he was employed in producing, handling, and/or working on products (including e.g., fryer oil) that went on to travel in interstate travel.

Plaintiff failed to assert any facts from which it can be found that his job affected commerce. *Mendoza,* 911 F.Supp.2d at 439. Plaintiff alleges that he was engaged in the production of goods for interstate commerce, but fails to support his claim with factual enhancements that would allow the Court to determine that his job was not simply an isolated local activity. *Mendoza*, 911 F.Supp.2d at 439; *Twombly*, 550 U.S. at 557. Therefore, Plaintiff's allegations amount to a mere recitation of the elements of individual coverage which courts have found insufficient to survive dismissal under Rule 12(b)(6). *Iqbal,* 556 U.S. at 678; see *Teaney v. Kenneth & Co. Honey Do Servs.*, No. 3:13-CV-4211-L, 2014 WL 3435416, at *4 (N.D. Tex. July 15, 2014) (Lindsay, J.) ("Plaintiff does not allege any facts whatsoever to support individual coverage. He merely states in conclusory fashion that he was individually engaged in commerce."); *Morrow*, 2011 WL 5599051, at *3 (dismissing FLSA claims where the plaintiff, "rather than pleading specific facts that establish individual or enterprise coverage[,] . . . merely recite[d] the statutory elements of FLSA coverage, or assert[ed] generalized facts"); see also *Lindgren v. Spears*, No. H-10-1929, 2010 WL 5437270, at *3 (S.D. Tex. Dec. 27, 2010) (dismissing an FLSA claim where the "allegations of FLSA coverage are conclusory [and] merely repeat the statutory elements of coverage").

## 2. Enterprise Coverage

To sufficiently allege enterprise coverage, Plaintiff must include facts that establish he was "employed in an enterprise engaged in commerce or in the production of goods for commerce." See 29 U.S.C. §§ 206(a)(1), 207(a)(1). For the purposes of establishing enterprise coverage, the FLSA defines an "enterprise engaged in commerce or in the production of goods for commerce" as one that (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000. 29 U.S.C. § 203(s)(1).

The first prong of the enterprise coverage definition can be met by either meeting the commerce requirement or the handling requirement. *Mendoza*, 911 F.Supp.2d at 439-40. Additionally, Plaintiff's allegations must satisfy the dollar-volume requirement of the second prong. As to his enterprise coverage claim, Plaintiff alleges:

> 82. Upon information and belief, at all times relevant to this action, Jimmy's Donut was an enterprise engaged in commerce or in the production of goods for commerce with the meaning of Section 3(s)(1) of the FSLA, 29 U.S.C. §203(s), in that said enterprise had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce, by any person, (including, e.g. fryers, ovens, and baking supplies and ingredients) in that the said enterprise had an annual gross volume of sales made or business done in excess of $500,000, exclusive of excise taxes at the retail level which are separately stated.

Plaintiff has alleged the basic elements of enterprise coverage, but not the necessary facts to support it. Specifically, Plaintiff's allegations in paragraph 82 regarding the commerce and handling requirements are merely conclusory and do not state any facts from which it can be gleaned that the enterprise and its employees are actually involved in commerce. While Plaintiff's allegations concerning the dollar volume requirement are read with some lenience, he nonetheless

is expected to be familiar enough with his employer's business to be able to supplement his application of the commerce and handling clause beyond the bare allegations he asserts here. See *Centeno*, 2015 WL 247735, at *11.

As it stands, Plaintiff's complaint merely recites the applicable statutory, regulatory, and precedential language regarding enterprise coverage. See *Morrow,* 2011 WL 5599051, at *3; *Iqbal*, 556 U.S. at 678; see also *Lindgren*, 2010 WL 5437270, at *3. And simply stated, Courts requires additional factual enhancements to identify the contours of Plaintiff's claim. See *Centeno*, 2015 WL 247735, at *11. Therefore, Plaintiff's claim under FSLA should be dismissed with prejudice.

### III. CONCLUSION

The forced labor provisions of the TVPRA are not intended to redress every bad employment relationship involving immigrants. They are intended to effectuate the constitutional prohibitions against slavery and involuntary servitude by criminalizing the act of coercing persons into providing labor and services against their will. Clearly, Plaintiff was not coerced in this case.

One can only surmise that a debt in the amount that Plaintiff alleges would tend to cause many individuals to question how they came to be in that situation. Plaintiff's belief, however, that he was "lured" into that situation by Defendants is simply misplaced and inaccurate. And certainly, filing a federal civil suit against Defendants is not the solution if the facts do not state or support claim for which relief can be granted. Therefore, Plaintiff's claims should be dismissed.

**RAY GALVAN, P.C.**

By: /s/ *Ray Galvan, Jr.*
Ray Galvan, Jr.
TX St. Bar No. 07599300

>8111 LBJ Frwy. Ste. 1010
>(972) 235-8160 *Telephone*
>(972) 235-6217 *Facsimile*
>raygalvan@gmail.com
>
>**ATTORNEY FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I, Ray Galvan, Jr., hereby certify that a true and correct copy of the foregoing Defendants' Motion to Dismiss was served electronically on the 18th day of July, 2019, upon all counsel of record and interested parties by the Northern District of Texas ECF method.

>/s/ *Ray Galvan, Jr.*
>Ray Galvan, Jr.