UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| RAVIT PAB, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CASE NO. 3:19-cv-1480-N |
| § | |
| CHANVEASNA SOM and DANY OUN § | |
| SOM, § | |
| § | |
| Defendants. § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6)**

**I.   INTRODUCTION**

Plaintiff is a victim of forced labor and human trafficking, brought to the United States by Defendants to work in their donut shop in Royse City, Texas. Plaintiff's Original Complaint sets forth detailed factual allegations supporting his claims that Defendants subjected him to forced labor in violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA") and failed to pay him minimum and overtime wages in violation of the Fair Labor Standards Act ("FLSA") or, in the alternative, failed to pay him minimum wages in violation of the Texas Minimum Wage Act ("TMWA"). Defendants' motion to dismiss fundamentally misconstrues Plaintiff's claims and attempts to reframe the Complaint in a light favorable to Defendants; ignores the precise, sufficiently pleaded allegations in the Complaint; and fails to articulate a legally sufficient basis for the assertion that the Complaint fails to state a claim for which relief can be granted. For these reasons and others stated below, Defendants' motion should be denied in its entirety.

## II.   STANDARD OF REVIEW

Motions to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") are "viewed with disfavor and [are] seldom granted." *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (quoting *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011)). All well-pleaded facts are accepted as true and viewed in the light most favorable to the plaintiffs. *Acme Energy Servs. v. Heritage Consol., L.L.C. (In re Heritage Consol., L.L.C.)*, 765 F.3d 507, 511 (5th Cir. 2014). "[A] plaintiff[] must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152-53 (5th Cir. 2010) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 548 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). A complaint must allege enough facts to give rise to a reasonable hope or expectation that discovery will reveal evidence of the elements of the claims alleged. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 258 (5th Cir. 2009). A well-pleaded complaint may proceed even "if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556.

## III.   ARUGMENT AND AUTHORITIES

### A. THE COMPLAINT PLAUSIBLY ALLEGES TVPRA CLAIMS.

The Complaint alleges that the Defendants have violated the TVPRA or knowingly benefited from violations of the TVPRA in a number of ways: obtaining forced labor (18 U.S.C. § 1589(a)), recruiting or trafficking individuals for the purpose of forced labor (18 U.S.C. § 1590), knowingly benefiting from forced labor (18 U.S.C. §§ 1589(b), 1593A, 1595), conspiring to violate the TVPRA (18 U.S.C. § 1594), and confiscating or possessing immigration documents in

the course of violating the TVPRA (18 U.S.C. § 1592(a)). Defendants only move to dismiss claims brought under 18 U.S.C. §§ 1589 and 1592. Despite Defendants' efforts to recast Plaintiff's allegations in a light favorable to them, in contravention of clearly established precedent, *see In re Heritage Consol.*, 765 F.3d at 511, Defendants' motion wholly fails to justify dismissal of Plaintiff's §§ 1589 and 1592 claims.

   **1. The Complaint States a Claim Under 18 U.S.C. § 1589.**

Section 1589 of the TVPRA prohibits forced labor obtained by multiple possible means. As relevant here, a forced labor violation includes:

> provid[ing] or obtain[ing] the labor or services of a person . . . (2) by means of serious harm of threats to that person or another person . . . or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

18 U.S.C. § 1589(a).

Defendants assert that the handful of TVPRA cases they cite "are a far cry from Plaintiff's situation," and conclude, on the basis of this unexplained, unproven comparison, that the Complaint "does not allege conduct rising to the level of psychological coercion sufficient to constitute a crime under the TVPRA." ECF No. 7 at 6. Defendants' argument misrepresents the scope of the TVPRA and ignores the numerous specific factual allegations set forth in the Complaint.

"[T]he TVPA[1] not only protects victims from the most heinous human trafficking crimes, but also various additional types of fraud and extortion leading to forced labor." *Nuñag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 790 F. Supp. 2d 1134, 1145 (C.D. Cal. 2011). In passing the

---

[1] The forced labor provisions were originally enacted by the Trafficking Victims Protection Act of 2000 ("TVPA"), and have been reauthorized by the Trafficking Victims Protection Reauthorization Acts of 2003, 2005, 2008 and 2013 ("TVPRA").

TVPRA, Congress made clear that "[t]rafficking also involves violations of other laws, <u>including labor and immigration codes</u>." H.R. Conf. Rep. 106-939, at 4 (emphasis added). The Congressional intent "shows the broad reach of the TVPA and the broad class of individuals whom it protects," and it is the court's duty to "provide a forum for the alleged victims of forced labor, regardless of the severity of the alleged circumstances." *Nuñag-Tanedo*, 790 F. Supp. 2d at 1147.

To determine whether a plaintiff was subject to a threat of serious harm, courts look to whether a "defendant's misconduct has created a situation where ceasing labor would cause a plaintiff serious harm," recognizing that what constitutes serious harm for that plaintiff must be determined by considering the totality of the circumstances presented. *Nuñag-Tanedo*, 790 F. Supp. 2d at 1145; *see also Ross v. Jenkins*, 325 F. Supp.3d 1141, 1164 (D. Kan. 2018) (the relevant inquiry in assessing whether harm is sufficiently "serious" is whether the defendant "intentionally caused the oppressed person reasonably to believe, given her special vulnerabilities, that she had no alternative but to remain in involuntary service for a time") The applicable standard is whether someone's conduct "would compel someone in [the employee's] circumstances to continue working to avoid that harm." *United States v. Dann*, 652 F.3d 1160, 1170 (9th Cir. 2011). Here, Plaintiff has plausibly alleged serious harm.

<u>First</u>, the seriousness of the employer's conduct must be considered in light of "the particular vulnerabilities of a person in the victim's position." *Muchira v. Al-Rawaf*, 850 F.3d 605, 618 (4th Cir. 2017), *as amended* (Mar. 3, 2017) (citations omitted). Plaintiff has alleged that he was in particularly vulnerable circumstances because he lacked any contacts in the United States and spoke limited English, he had no way to sustain himself if he left Defendants' home without support, and he could not afford a flight back to Cambodia. ECF No. 1 at ¶ 51. Plaintiff has further alleged that Defendants discouraged him from making contacts in the United States, and that

Defendant Chanveasna Som became enraged the few times that Plaintiff went to church or out in the neighborhood alone. *Id*. at ¶ 52.

Second, serious harm includes "threats of being in debt and being unable to repay those debts." *David v. Signal Int'l, LLC*, 37 F. Supp. 3d 822, 832 (E.D. La. 2014); *see also Francis v. Apex USA, Inc.*, No. CIV-18-583-SLP, 2019 U.S. Dist. LEXIS 34612, at *10 (W.D. Okla. 2019) (denying motion to dismiss TVPRA claim where, if they ended their employment with defendants, "Plaintiffs could not pay their living expenses in [the U.S.], repay the debts they incurred to secure the employment, or afford travel home"). In *United States v. Calimlim*, for example, the Seventh Circuit concluded that, for a Filipino worker whose family in the Philippines depended on her salary, not being able to send money to them if she did not comply with her employer's demands constituted a serious harm. 538 F.3d 706, 711 (7th Cir. 2008). Similarly, in *David*, the court found that the plaintiffs had sufficiently pleaded a TVPRA claim by alleging that the defendants had recruited them by misleading promises and that the debt they incurred to pay recruitment fees compelled them to continue working. 37 F. Supp. 3d at 832.

Here, Plaintiff has alleged a scheme in which he was induced to incur thousands of dollars of debt in order to secure a visa and well-paying, full-time work in the United States. ECF No. 1 at ¶¶ 31–32. When he arrived, Defendants charged him an additional $5,000, an exorbitant amount that had not been disclosed to Plaintiff and drove him even further into debt. *Id*. at ¶ 40. Plaintiff has alleged that he believed that the only way he could pay off these debts was to work for Defendants. *Id.* at ¶¶ 41, 49, 51. Further, Plaintiff has alleged that, by failing to give him any take-home pay, Defendants effectively prevented him from returning home to Cambodia or going elsewhere in the United States. *Id*. at ¶ 51. Aside from the prohibitive cost of travel, Defendants had lured Plaintiff into a situation where he faced a crippling amount of debt, threats of harm to

himself or his parents if the debt was not paid off, and he had no practical way to repay the debt except by working for Defendants. *Id.*

Third, Plaintiff was induced to pay excessive recruitment fees and work for Defendants through false representations about the terms and conditions of his employment. Plaintiff was promised $3,000 per month, plus free room and board. *Id.* at ¶¶ 1, 35. In reality, he received no take-home pay, and Defendants charged him an additional $5,000 "sponsorship fee" upon his arrival. *Id.* at ¶¶ 2, 40. These deceptive recruitment practices and misrepresentations are a hallmark of human trafficking cases. *See, e.g.*, *United States v. Bradley*, 390 F.3d 145, 148 (1st Cir. 2004) (wages misrepresented to victims), *vacated on* Booker *grounds*, 545 U.S. 1101 (2005); *Kiwanuka v. Bakilana*, 844 F. Supp. 2d 107, 111 (D.D.C. 2012) (plaintiff lured to the U.S. with unfulfilled promises of educational opportunities and decent pay); *Nuñag-Tanedo*, 790 F. Supp. 2d at 1145 (amount of recruitment fees misrepresented to plaintiffs).

In sum, the Complaint contains allegations sufficient to support a forced labor violation based on the threat of serious harm and/or the use of a scheme, plan, or pattern intended to cause a person to believe he or another person would suffer serious harm or physical restraint. *See* 18 U.S.C. §§ 1589(a)(2), (4); *see also United States v. Farrell*, 563 F.3d 364, 373 (8th Cir. 2009) (difficult employment and living conditions provided support for jury's conclusion that victims were forced to labor); *Dann*, 652 F.3d at 1171 (a jury could find that "the failure to pay [an immigrant]—and thus the lack of money to leave or live—was sufficiently serious to compel [the immigrant] to continue working").

### 2. The Complaint States a Claim Under 18 U.S.C. § 1592.

Under 18 U.S.C. § 1592, document servitude occurs when a defendant "knowingly destroys, conceals, removes, confiscates, or possesses any actual or purported passport or other

immigration document, or any other actual or purported government identification document, of another person" in the course of trafficking, peonage, slavery, involuntary servitude, or forced labor, or with the intent to commit such acts. 18 U.S.C. §§ 1592(a)(1), (2). Defendants' argument that Plaintiff has failed to state a claim under § 1592 rests entirely on their assertion that Plaintiff has failed to demonstrate that Defendants violated, or intended to violate, §§ 1589 or 1590. As discussed *supra* Part III.A.1, Plaintiff has sufficiently alleged a forced labor violation under § 1589(a).

Furthermore, Plaintiff has alleged facts to support a finding of document servitude. The Complaint alleges that Defendants took possession of Plaintiff's green card for two months after he arrived in the United States. ECF No. 1 at ¶ 54. Together with allegations that Defendants were involved in a scheme involving human trafficking, *e.g.*, *id.* at ¶¶ 31–32, this allegation is sufficient to state a claim under § 1592. That Defendants ultimately returned the documents is of no moment. *See Nuñag-Tanedo*, 790 F. Supp. 2d at 1174 (denying motion to dismiss where plaintiffs alleged "instances" where defendants possessed their documents in the course of violating the TVPA).

### B. THE COMPLAINT PLAUSIBLY ALLEGES FLSA COVERAGE.

The FLSA covers employees who are "engaged in commerce or the production of goods for commerce" ("individual coverage") or "employed in an enterprise engaged in commerce or in the production of goods for commerce" ("enterprise coverage"). 29 U.S.C. § 207(a)(1). Defendants argue that Plaintiff has failed to allege sufficient detail to demonstrate that Defendants' business, Jimmy's Donuts, was covered under the FLSA. ECF No. 7 at 7. Plaintiff has pleaded a sufficient factual basis to support both the inference that Plaintiff was employed by an enterprise engaged in commerce within the FLSA, ECF No. 1 at ¶ 81, and the inference that Plaintiff was individually covered by the Act, *id.* at ¶ 82.

1. **The Complaint Sufficiently Alleges Individual Coverage.**

The minimum wage and overtime provisions of the FLSA apply to "employees who in any workweek is engaged in commerce of in the production of goods for commerce." 29 U.S.C. § 206(a)(1). Individual coverage is based on the nature of the particular employee's work activities, rather than on the business, employer, or industry as a whole. *See Mitchell v. Lublin, McGaughy & Assocs.*, 358 U.S. 207, 264 (1959). Section 203(j) of the FLSA provides that an employee engages in the production of goods for commerce if he or she is "employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any closely related process or occupation directly essential to the production thereof, in any State." 29 U.S.C. § 203(j). The term "production" includes all types of production-related activities, ranging from producing or manufacturing goods to handling or "in any other manner working" on goods during the production process. *See Id*. The Supreme Court has interpreted FLSA coverage broadly in this area to include "every step in putting the subject to commerce," including "all steps whether manufacture or not, which lead to readiness for putting goods into the stream of commerce," as well as "every kind of incidental operation preparatory" to the process. *W. Union Tel. Co. v. Lenroot*, 323 U.S. 490, 503 (1945). The term "goods" includes any part of ingredient of the good or material used in the production process. 29 C.F.R. §§776.20(c), 779.14. Consequently, the fact that goods are processed or changed in form by several in-state employers before going into interstate or foreign commerce does not alter their character under the FLSA. *Id*. at § 776.20(c) (citing *D.A. Schulte Inc. v. Gangi*, 328 U.S. 108 (1946)).

Defendants argue that Plaintiff "fails to support his claim with factual enhancements that would allow the Court to determine that his job was not simply an isolated local activity." ECF No. 7 at 8. But this contention is belied by Defendants' recitation of paragraph 83 of the Complaint,

which alleges that Plaintiff "was employed in producing, handling, and/or working on products (including e.g., fryer oil) that went on to travel in interstate travel." *Id*. (citing ECF No. 1 at ¶ 83) (emphasis added). This allegation is sufficient to support the inference that Plaintiff spent time handing fryer oil that was then put into a process that included interstate commerce, *e.g.*, refinement into products, including biofuels, that traveled across state lines in the stream of commerce. It is therefore sufficient to state a claim to relief that is plausible on its face.

2. **The Complaint Sufficiently Alleges Enterprise Coverage.**

An "enterprise" under Section 3(r) is covered by the FLSA if it qualifies under Section 3(s)(1) as an "enterprise engaged in commerce or in the production of goods for commerce." Section 3(s)(1)(A) requires that such an enterprise:

> (i) ha[ve] employees engaged in commerce or in the production of goods for commerce, or . . . ha[ve] employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by an person; and
>
> (ii) [be] an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

29 U.S.C. § 203(s)(1)(A). The "handling" standard in Section 3(s)(1)(A)(i) includes handling goods that were produced out of state but which are used in the employer's business, including, for example, cleaning supplies used by employees in a seafood restaurant. *See Dole v. Bishop*, 740 F.Supp. 1221, 1225 (S.D. Miss. 1990) (deeming seafood restaurants covered enterprises because waitresses, cooks, and busboys regularly handled food items and cleaning supplies shipped from outside of the state). The language of the handling cause including the words "'or materials' leads to the result that virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA." *Id.* at 1226 (citing *Dunlop v. Industrial American Corp.*, 516 F.2d 498, 501-02 (5th Cir. 1975)).

Defendants argue that the allegations of enterprise coverage in the Complaint "are merely conclusory and do not state any facts from which it can be gleaned that the enterprise and its employees are actually involved in commerce." ECF No. 7 at 9. Again, this contention is belied by Defendants' recitation of paragraph 82 of the Complaint, which alleges that Jimmy's Donuts "had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce, by any person, (including, e.g. fryers, ovens, and baking supplies and ingredients)." *Id*. (quoting ECF No. 1, at ¶ 82) (emphasis added). Together with the allegation that Defendants' enterprise grossed not less than $500,000 annually, this allegation is sufficient to state a claim to relief that is plausible on its face. *See Dole*, 740 F.Supp. at 1225.

## IV.   CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court deny all aspects of Defendants' Motion to Dismiss.[2]

Dated:  August 8, 2019                                    Respectfully submitted,

                                                             EQUAL JUSTICE CENTER

                                        By:    /s/ Reema Ali
                                                Reema Ali
                                                Texas State Bar No. 24105327
                                                rali@equaljusticecenter.org
                                                1250 W. Mockingbird Ln., Ste. 455
                                                Dallas, Texas 75247
                                                Tel (469) 228-4234
                                                Fax (469) 941-0861

                                                Christopher J. Willett
                                                Texas State Bar No. 24061895

---

[2] If the Court determines that the Complaint is subject to dismissal for failure to state a claim, Plaintiff respectfully requests leave to amend the Complaint in order to cure any deficiency.

*Plaintiff's Response in Opposition to Defendants' Motion to Dismiss*          Page 10 of 11

        cwillett@equaljusticecenter.org
Rebecca Eisenbrey (admission to N.D.T.X. pending)
Texas State Bar No. 24097646
reisenbrey@equaljusticecenter.org
510 Congress Ave., Ste. 206
Austin, Texas 78704
Tel (512) 474-0007, ext. 107
Fax (512) 474-0007

COUNSEL FOR PLAINTIFFS